**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DERRICK LAMONT HAMPTON, | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 12-1416 |
| | ) | Judge Cathy Bissoon/ |
| LOUIS S. FOLINO *Superintendent State* | ) | Chief Magistrate Judge Maureen P. Kelly |
| *Correctional Institution at Greene, Greene* | ) | |
| *County, PA,* | ) | |
| Respondents. | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

## I. RECOMMENDATION

It is respectfully recommended that the Petition under 28 U.S.C. § 2254 for Writ of

Habeas Corpus by a Person in State Custody (the "Petition"), ECF No. 2, be dismissed.  It is

further respectfully recommended that a certificate of appealability be denied.

## II. REPORT

In October 2002, a West Mifflin police officer was shot during the course of the

investigation of a late night robbery of a convenience store.  Derrick Lamont Hampton

("Petitioner") was arrested for shooting the officer and subsequently charged with one count of

criminal attempt to commit homicide and related charges.  On December 9, 2005, Petitioner was

convicted of the charges of criminal attempt to commit homicide, aggravated assault, criminal

conspiracy, burglary, criminal trespass and possession of a firearm without a license.

In the Petition, Petitioner challenges the convictions obtained in the Allegheny County

Court of Common Pleas (the "Sentencing Court").   Specifically, Petitioner raises three grounds

on which he claims that he is being held in violation of the Constitution, laws or treaties of the

United States.

GROUND ONE:  APPELLATE COUNSEL RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE BY FILING A DEFICIENT APPELLATE BRIEF ON DIRECT APPEAL WAIVING MERITORIOUS CLAIMS OF TRIAL COUNSEL'S INEFFECTIVENESS.

ECF No. 2 at 11.

GROUND TWO:  TRIAL COUNSEL RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE FOR FAILING TO OBJECT AT THE TIME OF SENTENCING TO THE IMPOSITION OF CONSECUTIVE SENTENCES FOR THE SAME OFFENSE IN VIOLATION OF BLOCHBERGER [sic] V. UNITED STATES, 284 U.S. 299 (1932).

Id. at 16.

CLAIM [sic] THREE:  TRIAL COUNSEL RENDERED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT, REQUEST REDACTION OR A CURATIVE INSTRUCTION WHEN THE PROSECUTION INTRODUCED NON-TESTIFYING CO-DEFENDANT'S STATEMENT IN VIOLATION OF THE BRUTON RULE.

Id. at 19.

Because Petitioner fails to show that the state courts' adjudication of these claims was contrary to or an unreasonable application of United States Supreme Court precedent, he fails to carry his burden to show entitlement to relief.  Accordingly, the instant Petition should be denied and because reasonable jurists would not find the recommended disposition debatable, a certificate of appealability should also be denied.

## A.  FACTUAL HISTORY

The factual history as summarized by the Pennsylvania Superior Court is as follows:

Hampton's convictions arise out of a confrontation with police in West Mifflin, Allegheny County, and subsequent breaking and entering of an apartment as Hampton and his co-conspirator fled. Hampton and his confederate first encountered West Mifflin police officer Michael Booth sometime after 2 a.m. as Officer Booth drove through the parking lot of a local apartment complex searching for two men who had robbed a nearby convenience store. The store employee who reported the robbery had been ordered by the robber to lie on the

floor and, consequently, could describe the perpetrator only as an African-American male who escaped in a dark colored car. In response to that report, Officer Booth alerted to dark-colored cars and ventured to the Mifflin Estates Apartments on suspicion that the perpetrators of the robbery may have fled there. Upon reaching the apartment complex, Officer Booth saw a dark-colored car parked in the lot and pulled his own car up to investigate. After he got out of the car, Officer Booth verified that the vehicle was in fact parked and that no one was in or near it. Before he could return to his own vehicle, however, he observed another dark-colored car back up in the direction of his police cruiser and then strike it on the right fender. Officer Booth then ordered the car to stop and approached the passenger side window, where he leaned down to ask the driver for his license. Hampton, who was in the driver's seat, replied that he did not have a license and then pulled a gun from his lap and aimed it at Officer Booth, extending his arm past the passenger in the officer's direction. When Hampton pulled the trigger, the gun misfired, the discharge of a shell replaced by a harmless click. Nevertheless, as Officer Booth jumped back from the car, Hampton continued to shoot, one shot finding its mark in Officer Booth's leg. As Officer Booth returned fire, Hampton and his cohort tried to drive away, but crashed into a sign post, prompting the two men to flee from the vehicle into the apartment complex.

In response to Officer Booth's call for assistance, the police department dispatched Officers Davies, Considine, and Skillpa. Examination at a local hospital emergency room confirmed that Officer Booth had received a surface gunshot wound, but at his request, the physician discharged him and he returned to the Mifflin Estates apartment complex. In Booth's absence, Officer Skillpa made a visual inspection of the vehicle Hampton had been driving and found a .38 caliber revolver on the front seat, which he seized as evidence. In addition, police found a .45 caliber gun approximately twelve feet away from the car and collected fourteen shell casings from the immediate area.

After the men in the car had fled, Officers Considine and Davies searched the grounds of the apartment complex and saw two individuals run from a forested area nearby toward the back of the complex's 300 building. Officer Considine chased the two and, after losing sight of them momentarily, noted that a window screen to one of the first-floor apartments, number 308, had been removed, leaving the window fully open to the outside. Apartment 308 was rented by Caroline Hoachlanger, who lived in the apartment with her fiancé, Ronald Stein. On the night in question, she and Stein awakened to the sound of voices in their living room and then heard someone using the telephone. As the couple lay in bed pretending to be asleep, Hampton's co-conspirator, Samuel Brown, entered the room and, after several minutes, stripped to his underwear. He then slid into the bed next to them and told Hoachlanger and Stein, "let's pretend that this is normal." Moments later, however, Hampton entered the bedroom holding a gun and directed the other three into the living room. Brown, still in his underwear, asked Stein for a pair of pants, which Stein gave him and the two men, along with Hampton and Hoachlanger, went into the living room.

Meanwhile, the police had gained access to the apartment building and Officer Considine went to the door of apartment 308. When he knocked, Hoachlanger answered while Hampton hid in a closet behind some garments. Officer Considine asked Hoachlanger how many people were in the apartment and whether they had guns. As Ms. Hoachlanger responded, betraying the presence of Hampton and Brown, Brown walked into the hall attired in pajama bottoms and brazenly asked the officers what was going on. The police then arrested both Brown and Hampton. When the officers inspected the closet in which Hampton had been hiding, they discovered a nine millimeter Glock with extra magazines, a black coat with a hood, and a ski mask like the one worn by the robber of the convenience store. Police also discovered a nine millimeter Ruger secreted under the mattress in Hoachlanger's bedroom. Both Hoachlanger and Stein denied owning the firearms.

ECF No. 14 at 11 – 12 (quoting Superior Court slip op., ECF No. 14-2 at 29 – 32).

**B. PROCEDURAL HISTORY**

In the instant federal action, Petitioner is proceeding pro se. The original habeas Petition was filed. ECF No. 1. Thereafter, a "Corrected Petition for Writ of Habeas Corpus" was filed, which is the operative Petition. ECF No. 2. After being granted an extension of time, Respondents filed their Answer, in which they argued that Petitioner was not entitled to relief. ECF No. 14. The Answer included copies of much of the state court record. Respondents also caused the original state court record to be transmitted to the Court. Although Petitioner filed a motion seeking leave to conduct discovery, ECF No. 15, after Respondents filed a reply opposing Petitioner's motion, ECF No. 17, the undersigned denied the motion. ECF No. 19. Petitioner appealed, ECF No. 21, and District Judge Cathy Bissoon affirmed the denial of the motion. ECF No. 22.

**C. APPLICABLE LEGAL PRINCIPLES**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because

Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue.  See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d).  In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States."  Id. at 404-05 (emphasis deleted).  The Supreme Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 412-13.

The United States Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts

v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197. Under the "contrary to" clause, the relevant universe of analysis is restricted to the holdings of United States Supreme Court cases as they existed at the time of the state court decision. Williams, 529 U.S. at 412. In contrast, under the "unreasonable application" clause, federal habeas courts may consider lower federal court cases in determining whether the state court's application of United States Supreme Court precedent was objectively unreasonable. Matteo, 171 F.3d at 890. But cf. Kysor v. Price, 58 F. App'x 540, 543 n.3 (3d Cir. 2002).

The limitation imposed by AEDPA on this Court's review is significant. The AEDPA "imposes a highly deferential standard for reviewing claims of legal error by state courts[.]" Burt v. Titlow, 134 S.Ct. 10, 15 (2013). Because the AEDPA standard of review applies herein, this Court is not considering the same issue that the Pennsylvania state courts did when they ruled on Petitioner's claims. See, e.g., Harrington v. Richter, 131 S.Ct. 770, 785 (2011) ("The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard[,]" which was the question before the state court.); id. at 788 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."); Rountree v. Balicki, 640 F.3d 530, 540 (3d Cir. 2011) ("Rountree's second Strickland burden in the state court was to show that his counsel's unprofessional conduct prejudiced his case. But his burden before us is greater: under AEDPA, the question is not whether a federal court believes the state

court's determination was incorrect, but whether that determination was unreasonable – a substantially higher threshold.") (internal quotations and citations omitted).

The AEDPA standard of review is one that is "difficult to meet and [a] highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt. The petitioner carries the burden of proof." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011) (internal quotations and citations omitted). The Supreme Court has held that this standard "is difficult to meet, because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." Greene v. Fisher, 132 S.Ct. 38, 43 (2011) (internal quotations and citations omitted).

Many state court's adjudications must be evaluated under § 2254(d)(1)'s "unreasonable application" clause, as is the case here, given that the Pennsylvania Superior Court addressed Petitioner's claims on the merits and applied the correct legal standard. "If the state court decision identifies the correct governing legal principle in existence at the time [such as the Strickland standard], a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case." Cullen, 131 S.Ct. at 1399 (quotation marks omitted). Indeed, the United States Court of Appeals for the Third Circuit has explained that:

> For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 75-76, 123 S.Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. Andrade, 538 U.S. at 75.

Rountree, 640 F.3d at 537 (parallel citations omitted).

The United States Supreme Court also has advised:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.  See Lockyer, supra, at 75.
>
>       If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther…. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington, 131 S.Ct. at 786-87 (parallel citations omitted).

Not surprisingly, as explained below, Petitioner fails to meet this heavy burden.

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2). However, Petitioner does not appear to argue this ground as a basis for granting relief herein.

## D.  DISCUSSION

### 1.  Standard of Review of Ineffective Assistance of Counsel

Petitioner raised some claims of ineffectiveness of trial counsel in the state courts during the post-sentence motion proceedings and on direct appeal.  Petitioner also raised claims of direct appeal counsel's ineffectiveness during the Post Conviction Relief Act ("PCRA") proceedings.  The PCRA trial court dismissed the PCRA Petition without a hearing.  The PCRA trial court denied relief and Petitioner appealed.   On appeal, the Pennsylvania Superior Court addressed Petitioner's claims of ineffectiveness against direct appeals counsel on the merits.  In doing so, the Superior Court utilized the three pronged state law test of ineffectiveness:  "(1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or

her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different."  Superior Court slip op., ECF No. 14-7 at 33.[1]

The state law standard applied by the Pennsylvania Superior Court has been found to be materially identical to the test of counsel's ineffectiveness definitively announced by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  Werts, 228 F.3d at 203.  The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" Strickland, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland." Id. at 204.  Pursuant to the

---

[1] In the course of its Opinion, the Superior Court on appeal from the PCRA court's disposition, referenced the PCRA standard for ineffectiveness found at 42 Pa.C.S.A. § 9543(a)(2)(ii).  42 Pa.C.S.A. § 9543(a)(2)(ii) provides in relevant part that PCRA relief is available if it is established that conviction resulted from "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."   However, as the Pennsylvania Supreme Court made clear, the PCRA standard found at 42 Pa.C.S.A. § 9543(a)(2)(ii) is the same as the Strickland standard. Commonwealth v. Kimball, 724 A.2d 326, 332-333 (Pa. 1999); Commonwealth ex rel. Dadario v. Goldberg, 773 A.2d 126, 129 (Pa. 2001) ("Accordingly, we held [in Kimball] that the standard of review, pursuant to  Section 9543(a)(2)(ii), of an ineffectiveness claim raised in a PCRA petition is the Strickland standard, as followed by this Court in Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973 (1987).").  Because the Superior Court referenced both the legal standard of Section 9543(a)(2)(ii) and the Pierce standard and because both of those standards are the same as the Strickland standard, this Court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which requires that a habeas petitioner demonstrate that the state court's adjudication of the federal claim resulted in a decision that was contrary to Supreme Court precedents or an unreasonable application of federal law. See also Manchas v. Superintendent , SCI Huntington, No. 2:07cv1112, 2009 WL 1606854, at *8 n.5 (W.D.Pa. June 5, 2009) (the PCRA standard of ineffectiveness is not contrary to Strickland) aff'd, 428 F. App'x 184 (3d Cir. 2011).

holding of <u>Werts</u>, Petitioner is barred from arguing that the Superior Court's decision applying the Pennsylvania standard of ineffectiveness is contrary to the standard announced in <u>Strickland</u>.

Moreover, Petitioner has not argued and does not point to any United States Supreme Court decision, in existence at the time that the Superior Court rendered its decision in this case, which has a set of facts that are materially indistinguishable from Petitioner's case where the outcome was different from the outcome reached by the Superior Court herein. <u>Williams</u>, 529 U.S. at 412 (analyzing whether a state court decision is "contrary to" Supreme Court precedent requires analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision."). Accordingly, Petitioner has not shown that the Superior Court's decision in this case was contrary to clearly established federal law as determined by the United States Supreme Court, in either of the two senses of "contrary to."

Thus, it remains Petitioner's burden to establish that the Superior Court's decision was an unreasonable application of federal law. However, because the Superior Court addressed Petitioner's three claims of ineffectiveness on the merits, this Court must apply the deferential standards of the AEDPA, which results in a doubly deferential standard as explained by the United States Supreme Court:

> "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' *id.*, at 689 [104 S.Ct. 2052]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, *Knowles*, 556 U.S., at ——, 129 S.Ct., at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —— [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."

<u>Premo v. Moore</u>, 131 S.Ct. 733, 740 (2011) (quoting <u>Harrington</u>, 131 S.Ct. at 788). <u>Accord</u>

<u>Grant v. Lockett</u>, 709 F.3d 224, 232 (3d Cir. 2013) ("'A state court must be granted a deference

and latitude that are not in operation when the case involves [direct] review under the *Strickland*

standard itself.' *Id.* Federal habeas review of ineffective assistance of counsel claims is thus

'doubly deferential.' *Pinholster*, 131 S.Ct. at 1403. Federal habeas courts must 'take a highly

deferential look at counsel's performance' under *Strickland*, 'through the deferential lens of §

2254(d).'"). The United States Court of Appeals for the Third Circuit has explained, "[i]t is []

only the rare claim of ineffective assistance of counsel that should succeed under the properly

deferential standard to be applied in scrutinizing counsel's performance." <u>United States v.</u>

<u>Kauffman</u>, 109 F.3d 186, 190 (3d Cir. 1997)(quoting <u>United States v. Gray</u>, 878 F.2d 702, 711

(3d Cir. 1989)).

As discussed below, Petitioner has not carried his burden to show that decision of the

Pennsylvania Superior Court constituted an unreasonable application of federal law concerning

ineffective assistance of counsel.

### 2. Ground One – Appellate counsel was ineffective for failing to raise ineffectiveness claims as to trial counsel.

Petitioner asserts that his appellate counsel, i.e., Attorney Christy Foreman, was

ineffective for failing to properly raise ineffectiveness as to trial counsel, Attorney Patrick

Thomassey. Petitioner further alleges that the direct appeal brief was so deficient that the

Superior Court found that Attorney Foreman's failure to develop certain claims was tantamount

to an abandonment of the claims of the ineffectiveness of trial counsel. ECF No. 2 at 11;

Superior Court slip op. on direct appeal, ECF No. 14-2 at 29 – 46. Specifically, Petitioner

claims his appellate counsel was ineffective for waiving three claims of trial counsel's alleged

ineffectiveness: 1) trial counsel was ineffective for failing to file a pre-trial motion to suppress an

unnecessarily suggestive identification of Petitioner by Officer Booth; 2) trial counsel was ineffective for allegedly failing to conduct any pre-trial preparation or investigation and 3) trial counsel was ineffective for failing to request a postponement after receiving medical records concerning Officer Booth's treatment for being shot in the leg. ECF No. 2 at 11 - 13.

### a) Failure to file a pre-trial motion to suppress

Petitioner argues that, at trial, Officer Booth made an in court identification of Petitioner as the one who was driving the car and pulled a gun on the officer and started shooting at him. Petitioner complains that Officer Booth saw Petitioner in a holding cell at the police station and the Chief of Police pointed out Petitioner to Officer Booth and told him, "we have the guys here at the station involved with your incident." ECF No. 2 at 11. Petitioner seemingly complains that Officer Booth's in-court identification was tainted and that his trial counsel should have filed a pre-trial motion to suppress and/or should have sought to exclude Officer Booth from identifying Petitioner at trial.

The Superior Court addressed this issue as follows:

> Officer Booth's identification of Hampton as the driver of the vehicle was not the only evidence linking Hampton to the vehicle and thereby the shooting. The vehicle's owner testified that she lent the vehicle to Hampton. The police recovered batteries with Hampton's fingerprints from the rear floor of the vehicle. The clothing Officer Booth observed on Hampton while he was in the vehicle matched the clothing that appeared in Hoachlanger and Stein's apartment on October 24, 2003. Similarly, the Ruger handgun found in the apartment matched the nine-millimeter cartridges found outside the apartment building. . . . Officer Booth's identification did not prejudice Hampton such that the result of the trial would have been different. His first sub-issue fails for lack of arguable merit and prejudice.

ECF No. 14-7 at 41 – 42.

The Superior Court's conclusion, as set forth in the above quote was that direct appeals counsel was not ineffective for failing to raise the issue of trial counsel's failure to object to the

in-court identification by Officer Booth. We find this conclusion by the Superior Court to constitute a conclusion that because Petitioner was not prejudiced by his trial counsel's failure to object to the identification, given the other evidence establishing Petitioner's presence in the car, the claim of trial counsel's ineffectiveness was meritless and, therefore, direct appeals counsel could not be found ineffective for failing to raise or to properly raise such a meritless claim. Petitioner fails to carry his burden to establish that the Superior Court's disposition was an unreasonable application of the United States Supreme Court law on ineffective assistance of counsel. See Werts v. Vaughn, 228 F.3d at 202 ("counsel cannot be deemed ineffective for failing to raise a meritless claim"). Therefore, this issue does not merit relief.

### b) Failure to conduct pre-trial investigation

Petitioner also alleges that his trial counsel, Attorney Thomassey, was ineffective for failing to conduct any pre-trial investigation which resulted in Attorney Thomassey being "blind-sided at trial" with the testimony of Officer Booth who testified that Petitioner shot him in the leg. ECF No. 2 at 12. As noted above, Petitioner's claim of trial counsel's ineffectiveness for failing to conduct a pre-trial investigation is, in fact, merely a sub-argument in Petitioner's claim that his direct appeals counsel was ineffective in the direct appeal for failing to properly preserve this particular claim of trial counsel's ineffectiveness in the appellate brief.

The Superior Court rejected this contention noting that "[f]irst, Hampton has not put forth evidence supporting the conclusion that his trial counsel performed no pretrial investigation and preparation whatsoever." ECF No. 14-7 at 43. We note in this regard the PCRA trial court also rejected this same claim of Attorney Thomassey's alleged failure to investigate. The PCRA trial court found that "[t]estimony was taken at the hearing on Hampton's petition for post-conviction relief [i.e., at the hearing on the post-sentence motion filed by Attorney Foreman] with respect to

Mr. Thomassey's investigation and involvement with his client and this Court chose to accept Mr. Thomassey's version in light of his familiarity with the facts of this case and the testimony that was educed at the time of trial." ECF No. 14-7 at 25 – 26.

Petitioner fails to persuade this Court that the state courts' rejection of this claim was an unreasonable application of United States Supreme Court precedent on ineffectiveness. Indeed, we find the state courts' rejection of this claim to be, in effect, a holding that Petitioner simply failed to rebut the presumed effectiveness of trial counsel. i.e., that counsel is presumed to have done what he should have done. United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995) ("counsel is presumed effective . . . . we are mindful of the strong presumption that counsel's performance was reasonable").

In his argument to this Court, Petitioner seemingly suggests that had Attorney Thomassey subjected the firearms found at the scene to "ballistics analysis" and "firearm expert" examination, such testing would have established that Officer Booth's version of the events was implausible. ECF No. 2 at 12. Such after the fact speculation as to what results unperformed tests would have yielded and further speculation that the results would have proved helpful is simply insufficient at this stage to carry his burden of rebutting the presumed effectiveness of Attorney Thomassey. See Schlette v. California, 284 F.2d 827, 833-34 (9th Cir. 1960)("A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused."). Accordingly, because the claim that Attorney Thomassey was ineffective for failing to conduct pre-trial investigation is not meritorious, it follows that

direct appeals counsel cannot be found ineffective for failing to have preserved this particular claim of Attorney Thomassey's alleged ineffectiveness. <u>Werts v. Vaughn</u>.

### c) Failure to request a postponement

Petitioner's third claim of trial counsel's ineffectiveness is that Attorney Thomassey failed to obtain Officer Booth's medical records concerning treatment of his gunshot wound to the leg, until the day of Petitioner's trial, and failed to request a postponement of the trial "in order to submit the medical records to expert examination along with the firearms and ammunition recovered at the crime scene." ECF No. 2 at 12. Again, as noted above, Petitioner's claim of trial counsel's ineffectiveness for failing to request a postponement is, in fact, merely a sub-argument in Petitioner's claim that his direct appeals counsel was ineffective in the direct appeal for failing to properly preserve this particular claim of trial counsel's ineffectiveness in the appellate brief.

The Superior Court, in considering appellate counsel's alleged ineffectiveness for waiving this precise issue of trial counsel's ineffectiveness, found this issue to be meritless. The Superior Court held that:

> it was not direct appeal counsel's deficient argument that resulted in the failure of his claim [that trial counsel was ineffective for failing to move for a postponement]. Rather, the panel of this Court deemed the issue meritless because medical records were never offered into evidence; therefore, postponement was unnecessary.[9]

--------------------------------
[9] Relevant to this issue, Hampton's trial counsel testified at the post sentence motion hearing as follows:

> A. Well, you know, aggravated assault can be proved [sic] a number of ways either causing serious bodily injury or attempt to cause so should I have tried to postpone or to get the records? Maybe, but legally, I'm not so sure it made a big difference. If somebody shoots at a policeman, that is aggravated assault. If somebody shoots at a policeman and hits the policeman, that is also aggravated assault.

> This case, I thought, occurred more on what happened in the car, who
> had the gun in the car. That is how I tried – attempted to try the case
> for Mr. Hampton to the best of my ability.
>   THE COURT: A postponement wouldn't have been granted
> because the case was postponed seven times previously.

ECF. No. 14-7 at 43 – 44. Petitioner fails to persuade this Court that the Superior Court's

disposition is "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

Harrington, 131 S.Ct. at 786-87. Indeed, given that the trial court indicated that a

postponement would not have been granted, trial counsel could certainly not be

ineffective for making a motion that would have been denied just in order to examine

medical records that were of little if any importance to the Petitioner's case. Further, the

post sentence motion hearing record shows that the medical records were of no relevance

to Attorney Thomassey's theory of defense of the case. Accordingly sub-issue three

does not afford Petitioner relief.

Given that Petitioner has failed to show that the state courts' rejection of his claims that

trial counsel was ineffective constituted an unreasonable application of United States Supreme

Court precedent, he cannot, *a fortiori*, establish his direct appeal counsel's ineffectiveness for

failing to raise or to properly raise such meritless claims of trial counsel's ineffectiveness.

Accordingly, Petitioner's Ground One and its three sub-claims fail to merit Petitioner any habeas

relief.

### 3. Ground Two – Trial counsel was ineffective for failing to object to consecutive sentences.

Petitioner next contends that his attempted criminal homicide conviction and his

aggravated assault conviction constituted the same offense and thus he could not be punished

twice for the same crime in violation of the double jeopardy principles announced in

Blockburger.  ECF No. 2 at 16.

"The primary test for whether . . . a defendant has been punished twice for the same offense is that offered in *Blockburger v. United States*, 284 U.S. 299 (1932)[.]" United States v. Lankford, 196 F.3d 563, 577 (5th Cir. 1999).  If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."  Blockburger v. United States, 284 U.S. 299, 304 (1932).  The Supreme Court has further explained that "[a]s *Blockburger* and other decisions applying its principle reveal,. . . the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied" and there is no double jeopardy violation.  Ianelli v. United States, 420 U.S. 770, 785 n.17 (1975).  In applications of the Blockburger test, the Supreme Court has "often concluded that two different statutes define the 'same offense,' typically because one is a lesser included offense of the other."  Rutledge v. United States, 517 U.S. 292, 297 (1996).  When courts apply the Blockburger test, "we examine not the particular circumstances involved in the case before us, but the statutory elements."  Unites States v. Lankford, 196 F.3d at 577;  United States v. Soape, 169 F.3d 257, 266 (5th Cir. 1999) ("The focus in determining the issue of multiplicity is on the statutory elements of the offenses, not on their application to the facts of the specific case before the court.");  United States v. Singleton, 16 F.3d 1419, 1422 (5th Cir. 1994) ("Determining whether statutory offenses are separate for double jeopardy purposes involves parsing the statutes apart from the facts of any particular case.").

On appeal, the Superior Court found that the statutory elements of attempted murder and aggravated assault on a police officer each possess an element that the other offense does not

and, therefore, <u>Blockburger</u> was not violated. Accordingly, the Superior Court concluded that Petitioner's trial counsel could not be ineffective for failing to raise a meritless claim. Superior Court slip op., ECF No. 14-7 at 39.

Petitioner has not shown that the Superior Court's disposition of this claim constituted an unreasonable application of United States Supreme Court precedent. Accordingly, this issue does not afford him federal habeas relief.

### 4. Ground Three – Trial counsel was ineffective for failing to raise a <u>Bruton</u> objection to the admission of statement by co-defendant.

Petitioner's third and final Ground for Relief is a claim that his trial counsel was ineffective for failing to raise an objection based on <u>Bruton v. United States</u>, 391 U.S. 123 (1968). In <u>Bruton</u> the United States Supreme Court held that an out of court statement provided by a criminal defendant's co-defendant, which implicates the criminal defendant cannot be introduced into evidence without redacting those parts that would implicate the criminal defendant. Here, Petitioner seeks habeas relief based on the fact that an out of court statement, made by Petitioner's co-defendant, who also did not take the stand at their joint trial, which implicated Petitioner, was not redacted nor objected to by Petitioner's trial counsel.

On appeal, the state courts found that there was indeed a violation of <u>Bruton</u> and so, the state courts found that, in effect, the first prong of the <u>Strickland</u> test was met. However, the state courts found that Petitioner failed to show prejudice from the <u>Bruton</u> violation due to the failure of Petitioner's trial counsel to object or require redaction.

The Superior Court thoroughly addressed this issue in its opinion in the PCRA proceedings. ECF No. 14-7 at 34 – 37. The Superior Court accepted that <u>Bruton</u> was violated but noted that "Brown's [i.e., Petitioner's co-defendant] statement implicitly identifies Hampton as the driver who hit Officer Booth's police car and sped away, crashed, and then unlawfully

entered the window of an apartment.  Brown's statement included no explicit references to Hampton, but implicated him based on the other evidence presented and the nature of the joint trial.  Hampton's counsel did not request nor did Hampton receive a limiting instruction.  A **Bruton** violation occurred."  Id. at 36.   However, the Superior Court went on to find that Petitioner suffered no prejudice under Strickland  due to trial counsel's failure to raise the Bruton issue.

Specifically, the Superior Court reasoned that:

> Nevertheless, Brown's statement implicated Hampton only in the trespass charge, but not in the more serious crimes with which Hampton and Brown were charged.  Significantly, Brown's statement did not indicate Hampton fired, or attempted to fire, a gun at Officer Booth.  Brown's statement included significant overlap with Officer Booth's testimony on the events between the vehicle hitting the police car and the ultimate arrest of Hampton and Brown.  The only substantial difference between Officer Booth's version of the events and Brown's recitation is that Brown blames Hampton for the escalation of events and attempts to make their conduct appear more innocent.
>
> Several other witness' testimony, including Hoachlanger and Stein, corroborated Brown's implication of Hampton in the trespass.  While Hampton suffered from prejudice from the **Bruton** violation, it was not of sufficient quantity that the outcome of the trial would have been different if Hampton's counsel had objected or sought a limiting instruction.  Nor would Hampton have received appellate relief on such a claim if his direct appeal counsel had brought such a claim.  Hampton's first issue fails for lack of prejudice.

Id. at 36 – 37.  We read the foregoing to be a conclusion that Petitioner failed in the state courts to show prejudice due to trial counsel's ineffectiveness and thus, he could not succeed on a claim of direct appeals counsel's ineffectiveness for failure to raise this issue or to properly raise this issue.  This is so under the reasoning of the Superior Court because appellate counsel cannot be ineffective for failing to raise a claim of ineffective assistance of trial counsel where the claim of ineffective assistance of trial counsel cannot satisfy both prongs of Strickland.  Thus, Petitioner fails in this Court to show that the Superior Court's disposition of this claim is unreasonable.  Accordingly, this issue does

not afford Petitioner habeas relief.

**5. Certificate of Appealability**

Because jurists of reason would not find the foregoing analysis debatable, a certificate of appelability should also be denied.

## III. CONCLUSION

For the reasons set forth herein, it is respectfully recommended that the instant Petition be denied. A certificate of appealability should be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

Date: March 12, 2015

s/Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:  The Honorable Cathy Bissoon
     United States District Judge

     Derrick Lamont Hampton
     GP-2142
     SCI Greene
     175 Progress Drive
     Waynesburg, PA 15370

All counsel of record via CM-ECF